UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| RUSSELL BARNES,<br><br>       Plaintiff,<br><br>v.<br><br>CANAL INSURANCE COMPANY,<br><br>       Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [12] PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING [14] DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:25-cv-00068-DBB-DBP<br><br>District Judge David Barlow |

Before the court are Plaintiff Russell Barnes's ("Russell") Motion for Summary Judgment and Defendant Canal Insurance Company's ("Canal") Cross-Motion for Summary Judgment.[1] For the reasons below, the court denies Russell's motion and grants Canal's cross-motion.[2]

**UNDISPUTED MATERIAL FACTS**

On August 28, 2023, Russell was injured while resting in the sleeper berth of a semi-truck.[3] Marilyn[4] was driving the fully loaded truck through Logan Canyon in Utah, when she lost control of the truck and it veered off the road, tipped on its side, and slid down the embankment.[5]

---

[1] Pl.'s Mot. for Summ. J. ("Mot."), ECF No. 12, filed Oct. 17, 2025; Def.'s Cross-Mot. for Summ. J. ("Cross-Mot."), ECF No. 14, filed Nov. 14, 2025.

[2] Having reviewed the briefing and relevant law, the court finds that oral argument would not materially assist in resolving the matter. *See* DUCivR 7-1(g).

[3] Mot. ¶ 1; Cross-Mot. ¶¶ 18–21.

[4] Marilyn and Russell Barnes were estranged but still legally married at the time of the accident. *See* Cross-Mot. ¶ 17. Because the parties share the same surname, we refer to them by their first names.

[5] Mot. ¶ 1; Cross-Mot. ¶¶ 18–22.

At the time of the accident, Marilyn was the owner of RussMar Trucking LLC ("RussMar"), a Nebraska-based commercial trucking company, and Russell was a co-driver and a 1099 employee (independent contractor) hired by RussMar.[6] Canal insured RussMar under a commercial automobile insurance policy (No. I-156306001-2) (the "Policy") that was negotiated and executed in Nebraska, where Marilyn and Russell reside.[7]

The Policy contains two relevant exclusions. First, it excludes coverage for bodily injury to an "employee of the insured arising out of and in the course of [e]mployment by the insured; or [p]erforming the duties related to the conduct of the insured's business."[8] Second, the Policy excludes coverage for bodily injury to "[a]ny fellow employee" under the same conditions.[9] The Policy defines an employee as "[a]ny individual who in the course of his or her employment or contractual duties on behalf of any insured directly affects commercial motor vehicle safety" and expressly includes independent contractors and co-drivers.[10]

The Policy also contains an "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980" ("MCS-90 Endorsement") pursuant to federal motor carrier regulations that require a minimum of $750,000 for public liability insurance.[11] The MCS-90 Endorsement lists RussMar as the insured and, in relevant part, "agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence."[12] It further states

---

[6] Mot. 8, ¶¶ 1, 3; Cross-Mot. ¶¶ 1, 23; Notice of Removal, Ex. A: Petition for Declaratory Relief filed in Utah state court ("State Petition") 7, ECF No. 2-1, filed May 27, 2025.
[7] Mot. ¶ 3; Cross-Mot. ¶¶ 1–2, 4–6.
[8] Policy 122, ECF No. 22-1, filed Dec. 30, 2025 (internal quotation marks omitted).
[9] *Id.* (internal quotation marks omitted).
[10] *Id.* at 180.
[11] *See* 49 U.S.C. §§ 13906, 31139(b)(2); 49 C.F.R. § 387.7(d).
[12] Pl. Reply, Ex. A at 106–07, ECF No. 22-1, filed Dec. 30, 2025.

that "[s]uch insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment."[13]

Relatedly, the Federal Motor Carrier Safety Regulations (the "FMCSR") defines an "employee" as "any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety."[14] The definition "includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle)."[15]

Russell sought actual damages for his injuries from Canal in the amount of $4.93 million with the offer to settle for $3 million.[16] When Canal declined Russell's demand, he sued only Marilyn—not RussMar—for his injuries in Utah state court (the "Underlying Lawsuit") and obtained a judgment against her in the amount of $3,509,927.70.[17] Russell has not attempted to execute on the judgment, claiming that Marilyn is insolvent.[18] Instead, Russell filed a complaint in the First Judicial District of Utah against Canal to recover $750,000 under the MCS-90 Endorsement in the Policy.[19] The case was removed to federal court.[20]

## STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] A factual dispute is genuine when

---

[13] *Id.*
[14] 49 C.F.R. § 390.5.
[15] *Id.*
[16] Pl.'s Reply to Def.'s Opp'n to Mot. for Summ. J. ("Pl. Reply") Ex. B, ECF No. 22-2, filed Dec. 30, 2025.
[17] *See* Barnes v. Barnes, Civ. No. 240100054, Order on Evidentiary Hearing, Feb. 5, 2025, First Judicial District Court of Cache County, Utah. RussMar was administratively dissolved under Nebraska law in 2025. *See* Pl. Reply 15. Mot. ¶ 10.
[18] Decl. of Marilyn Barnes ("Marilyn Decl.") ¶ 23, ECF No. 13, filed Oct. 21, 2025; Mot. ¶ 10.
[19] *See generally* State Petition.
[20] Notice of Removal, ECF No. 2, filed May 27, 2025.
[21] Fed. R. Civ. P. 56(a).

"there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[22] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[23]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[24] "When reviewing cross-motions for summary judgment, the court evaluates each motion separately—'the denial of one does not require the grant of another.'"[25]

## DISCUSSION

There is no dispute over the underlying facts that would preclude summary judgment. In their cross-motions for summary judgment, the parties only dispute the legal question of whether Russell is excluded from the Policy's liability coverage.[26] Because the insurance contract at issue does not include a choice of law provision, the parties each propose application of the law of a different state to determine liability. Thus, the court first finds it necessary to determine which state's law governs this dispute.

## I.    Conflict of Laws

Generally, a federal court sitting in diversity applies the substantive law of the forum state, including its conflict of law rules.[27] Under Utah's conflict of law principles, "a court first

---

[22] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[23] *Id.*

[24] *Id.* at 670–71.

[25] *Valentine v. Auto-Owners Ins.*, 716 F. Supp. 3d 1164, 1172 (D. Utah Feb. 5, 2024) (quoting *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 434 (10th Cir. 1979)).

[26] *See* Mot. 1; Cross-Mot. 8.

[27] *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Pepsi-Cola Bottling Co. of Pittsburgh, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

determines whether there is a conflict between the laws of two states."[28] If there is a conflict, Utah courts use the "most significant relationship" test to determine which state's law applies.[29]

Here, there is no conflict of laws that necessitates use of the test. Russell relies on Utah Code section 31A-22-201, which states that "[e]very liability insurance policy shall provide that the bankruptcy or insolvency of the insured may not diminish any liability of the insurer to third parties, and that if execution against the insured is returned unsatisfied, an action may be maintained against the insurer to the extent that the liability is covered by the policy."[30] Yet Nebraska has a similar statute that "creates an exception to its direct-action rule" and allows direct actions against liability insurance carriers even on the basis of the insured's negligence "when the insured is insolvent or bankrupt."[31] More importantly, there is no conflict between Nebraska and Utah law because whether Russell is entitled to recovery from Canal hinges on the terms of the Policy, and both jurisdictions use the same principles of contract interpretation.[32] "When there is no conflict, the court applies the law of the forum."[33]

## II.    Coverage Under the Policy

Having addressed the conflict of laws issue, the court next examines whether Russell is excluded from the Policy's liability coverage.

---

[28] *Nelson v. Safeco Ins. Co. of Ill.*, No. 2:25-cv-244, 2025 WL 1638542, at *3 (D. Utah June 9, 2025) (quoting *Am. Nat'l Fire Ins. Co. v. Farmers Ins. Exchange*, 927 P.2d 186, 188 (Utah 1996)).
[29] *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶¶ 14–15, 54 P.3d 1054.
[30] Utah Code § 31A-22-201.
[31] *Davis v. Domino's Pizza, LLC*, 8:23-cv-548, 2025 WL 506434, at *4 (D. Neb. Feb. 14, 2025) (citing Neb. Rev. Stat. § 44-508).
[32] *See, e.g.*, *St. Paul Fire & Marine Ins. v. Commercial Union Assurance*, 606 P.2d 1206, 1208 n.1 (Utah 1980) (stating that "the words used in a contract of insurance will be given their usual and ordinary meaning absent evidence of a contrary intent of the parties"); *Gibbons Ranches, LLC v. Bailey*, 857 N.W.2d 808, 814 (Neb. 2015) ("When the terms of a contract are clear, . . . the terms are to be accorded their plan and ordinary meaning as an ordinary or reasonable person would understand them.").
[33] *Hambelton v. Canal Ins. Co.*, 405 Fed. App'x 321, 323 (10th Cir. 2010) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010)).

### A.    Employee Exclusions

As noted earlier, the Policy excludes coverage for bodily injuries to an "employee of the insured arising out of and in the course of [e]mployment by the insured; or [p]erforming the duties related to the conduct of the insured's business."[34] It similarly excludes bodily injuries to fellow employees.[35] Accordingly, whether Russell is covered hinges on whether he is an "employee." The Policy defines an employee as "[a]ny individual who in the course of his or her employment or contractual duties on behalf of any insured directly affects commercial motor vehicle safety." [36] The definition expressly includes independent contractors and co-drivers.[37]

Russell argues that the two employee exclusions do not apply to him because he did not directly affect commercial motor vehicle safety while he was in the sleeper berth.[38] This position, however, is at odds with the Policy's definition. On the day of the crash, Russell was performing duties for RussMar in a role that directly affected the safety of the semi-truck. Resting in a sleeper berth during the haul of a commercial load constitutes the type of "contractual duties on behalf of any insured" described in the Policy's "employee" definition.[39] Accordingly, the Policy excludes coverage for employees such as Russell who are injured during the course of their employment.

---

[34] Policy 122, ECF No. 22-1, filed Dec. 30, 2025 (internal quotation marks omitted).
[35] *Id.* (internal quotation marks omitted).
[36] *Id.* at 180.
[37] *Id.*
[38] Mot. 7–9.
[39] Policy at 180. *See also Tri-State Ins. Co. v. Loper*, 204 F.2d 557, 558–59 (10th Cir. 1953) (holding that truck driver who was in the sleeper cab at the time of the accident was still "an employee engaged in the employment of the insured at the time of the accident" because "[t]hroughout the entire trip he was either serving in a driving capacity or in a standby capacity in furtherance of the business of the insured," and it was "implicit in the employment that he occupy the sleeper cab at least part of the time while not driving").

### B.    MCS-90 Endorsement

Next, the parties dispute whether the MCS-90 Endorsement requires Canal to pay Russell for his injuries. Canal argues that the MCS-90 Endorsement is unenforceable because it only requires Canal to pay a judgment "against the insured," which the Policy lists as "RussMar," and because Russell is an employee, not a member of the public.[40]

Russell's failure to name RussMar as a defendant in the Underlying Lawsuit precludes coverage under the MCS-90 Endorsement. The endorsement only requires Canal to pay a judgment "against the insured."[41] Because the Policy lists RussMar as the insured, Canal would only have to pay a judgment against RussMar if the endorsement's terms apply.[42] And with no judgment against RussMar, the MCS-90 Endorsement does not compel Canal to pay Russell under the MCS-90 Endorsement.

Even if there were such a judgment, the terms of the MCS-90 Endorsement do not apply to liability for Russell's injuries. The terms expressly limit coverage to "public liability" and excludes liability for injuries to employees.[43] Whether the Policy's or the FMCSR's definitions of "employee" are used, the result is the same.[44] Both definitions of "employee" include Russell, who was undisputedly both a "co-driver" and an "independent contractor."[45] Granted, a co-driver

---

[40] Cross-Mot. 20; Def.'s Reply in Support of Def.'s Cross-Mot. for Summ. J. ("Def. Reply") 8–10, ECF No. 27, filed Feb. 11, 2026.

[41] Policy at 106–07.

[42] *See generally* Policy.

[43] *Id.* at 106–07 (emphasis added).

[44] *Compare* 49 C.F.R. § 390.5 *with* Policy at 180. Neither party argues that one should apply over the other. Russell cites the FMCSR definition but does not analyze or address whether the Policy's definition should apply, and Canal contends that the definitions do not materially differ in this case. *See* Mot. at 8–10; Pl. Reply 13–14; Cross-Mot. 17–21; Def. Reply 7–8.

[45] *See, e.g.*, *Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362 (5th Cir. 2002) (applying the FMCSR definition of an employee to exclude coverage for an independent contractor); *Perry v. Harco Nat'l Ins. Co.*, 129 F.3d 1072 (9th Cir. 1997) (same).

in a sleeper berth may not as "directly affect[] commercial motor vehicle safety" as a co-driver behind the wheel. But Russell admitted he was taking federally mandated rest, which squarely places it as part of his "contractual duties" and the course of his employment.[46]

Thus, regardless of where Russell was in the truck, the fact remains that Russell was in the truck as a co-driver. Although "co-driver" is not defined in the Policy, courts give undefined terms their plain and ordinary meaning.[47] A "co-driver" is "a person who shares the driving of a vehicle with another[.]"[48] Implicit in this meaning is the fact that co-drivers take turns and do not cease being a co-driver when they are not behind the wheel. Consequently, the fact that Russell was sleeping in the truck's berth did not change his status as an "employee" since he was still a co-driver awaiting his next turn to drive. Similarly, Russell's presence in the sleeper berth does not situate him in the same position as any other member of the public on a roadway when he was only sleeping in the truck because he was co-driving with Marilyn.

For these reasons, the MCS-90 Endorsement does not require Canal to pay Russell, whether as a statutory employee under the FMCSR or as an "employee" as defined in the Policy, for his injuries.

### C.    Public Policy

Russell also argues that the Policy violates public policy if it excludes him from coverage. Specifically, he argues that "Utah's public policy demands a narrow reading" of the Policy and cites Utah Code section 31A-22-201, which provides for direct action against an

---

[46] Mot. 8; Policy at 180.

[47] *See, e.g.*, *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566 (2012) ("When a term goes undefined . . . we give the term its ordinary meaning."); *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1285–86 (10th Cir. 2023) (stating that under principles of contract law, courts "afford undefined terms their plain and ordinary meanings").

[48] *Co-driver*, Oxford English Dictionary, https://www.oed.com/dictionary/co-driver_n?tab=meaning_and_use#9054040 [https://perma.cc/NZ8N-7NEW].

insurer when the insured is insolvent."[49] However, this argument overlooks the distinction in Utah's motor vehicle liability insurance statutes between employees and non-employees. "Motor vehicle liability coverage need not insure any liability . . . of an *employee* of the named insured, other than a domestic employee, while engaged in the employment of the insured, or while engaged in the operation, maintenance, or repair of a designated vehicle[.]"[50]

Moreover, "public policy considerations are rarely sufficient to override the plain language of the governing text" and "a court should consider public policy only where it is clarifying the meaning of an ambiguous statute or rule."[51] Because the statutes and Policy at issue here are unambiguous, the court finds Russell's public policy arguments unpersuasive.

In sum, the undisputed facts bar Russell from coverage under Policy, including the MCS-90 Endorsement, and Canal is entitled to summary judgment.

## ORDER

Accordingly, the court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Cross-Motion for Summary Judgment.[52]

Signed June 8, 2026.

BY THE COURT

_____

David Barlow
United States District Judge

---

[49] Mot. 9–12; Utah Code § 31A-22-201.
[50] Utah Code § 31A-22-303(3)(b) (emphasis added).
[51] *Cougar Canyon Loan, LLC v. Cypress Fund, LLC*, 2020 UT 28, ¶ 14, 466 P.3d 171.
[52] ECF Nos. 12 & 14.